1 | Norman J. Ronneberg, Jr. (SBN 68233)
E-Mail: norman.ronneberg@bullivant.com
2 | Kevin K. Ho (SBN 233408)
Email: kevin.ho@bullivant.com
3 | BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
4 | San Francisco, California  94108
Telephone:    415-352-2700
5 | Facsimile:    415-352-2701

6 | Attorneys for Plaintiff
ESCO MARINE INC.

7

$M\!\!\oint_{15}$ **FILED**

DEC 1 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11 | **CV   08        5575**

12 | ESCO MARINE INC.,                                            Case No.:

13 |                                 Plaintiff,         **VERIFIED COMPLAINT IN       MEJ
ADMIRALTY TO FORECLOSE**
14 |               v.                                     **MARITIME LIEN, FOR BREACH OF
CONTRACT, AND DECLARATORY**
15 | SS PACIFIC STAR (ex-ARTSHIP,                    **RELIEF**
ex-GOLDEN BEAR), her engines, tackle,
16 | equipment, appurtenances, freights, cargo, etc.     **In Admiralty**
(Official No. 239932) *in rem*;
17 | INTERNATIONAL DATA SECURITY, INC.,              **FRCivP 9(h) and 28 U.S.C §1333**
a Delaware corporate entity;  and
18 | INTERNATIONAL MARITIME SECURITY               **22 U.S.C. §2201**
ALLIANCE, LLC, a Delaware corporate entity.
19
                                 Defendants.
20

21 |           ESCO MARINE INC. ("ESCO MARINE"), by and through its attorneys Bullivant

22 | Houser Bailey PC, complains as follows against Defendants SS PACIFIC STAR (ex-ARTSHIP,

23 | ex-GOLDEN BEAR), her engines, tackle, equipment, appurtenances, freights, cargo, etc.

24 | (Official No. 239932) *in rem*, INTERNATIONAL DATA SECURITY, INC.,   a Delaware

25 | corporation; and INTERNATIONAL MARITIME SECURITY ALLIANCE, LLC, a Delaware

26 | corporation.

27 | ///

28 | ///

1

## I. **JURISDICTION AND VENUE**

2    1.    This is a case within the admiralty and maritime jurisdiction of this court, as set
3  forth in 28 U.S.C. §1333 and Rule 9(h) F.R.C.P.

4    2.    The action is also filed under and pursuant to the Federal Declaratory Judgment
5  Act, 28 U.S.C. §2201.

6    3.    Jurisdiction as against the *in rem* defendant exists because the above-named
7  vessel is now, or will be during the pendency of this action, within the jurisdiction of this court.

8    4.    At and during all the times hereinafter mentioned, the *in personam* defendants
9  were and are legal entities capable of being sued in this court; they owned, operated, managed
10  chartered and/or controlled the above-named vessel within the waters of San Francisco Bay and
11  within the jurisdiction of this court; they did and do business within this jurisdiction and state,
12  and are, therefore, subject to the jurisdiction of this court.

13    5.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because one or
14  more of the *in personam* defendants has its principal place of business in this District, and a
15  substantial portion of the events or omissions giving rise to the claims herein occurred within
16  this District.

17

## II. **THE PARTIES**

18    6.    The SS PACIFIC STAR (ex-ARTSHIP, ex-GOLDEN BEAR), official
19  No. 239932, her engines, tackle, equipment, appurtenances freights, cargo, etc., ("the vessel") is
20  owned and/or operated by the *in personam* defendants herein.

21    7.    The vessel is currently berthed at the Lennar Wharf, Mare Island, California.

22    8.    Plaintiff ESCO MARINE INC. ("ESCO MARINE") is a corporation organized
23  under the laws of the State of Delaware, with its principal place of business in Brownsville,
24  Texas.

25    9.    Defendant INTERNATIONAL DATA SECURITY INC. ("IDS") is a
26  corporation organized under the laws of the State of Delaware, with its principal place of
27  business within the jurisdiction of this court.

28  ///

10932093.1                                    – 2 –

1          10.     Defendant INTERNATIONAL MARITIME SECURITY ALLIANCE, LLC
2   ("IMSA) is a corporation organized under the laws of the State of Delaware, with its principal
3   place of business within the jurisdiction of this court.

4          11.     At and during all the times and places hereinafter mentioned, each of the *in*
5   *personam* defendants was the duly authorized agent, servant or employee of the remaining
6   defendants, and was at all times and places mentioned herein acting within the purpose and
7   scope of said agency, service and employment in connection with the matters herein alleged.
8   Accordingly, all defendants are jointly and severally liable for the sums and obligations alleged
9   herein.

10                        III. **GENERAL ALLEGATIONS**

11         12.     On February 24, 2004, plaintiff ESCO MARINE, owner of the ARTSHIP (now
12   known as the PACIFIC STAR), entered into a wharf lease with LENNAR MARE
13   ISLAND LLC ("LENNAR"), for the specific purpose of berthing the then-ARTSHIP
14   (ex GOLDEN BEAR) at LENNAR's Mare Island dock.[1]

15         13.     Under the terms of the wharf lease, ESCO MARINE was obligated to pay
16   LENNAR a monthly dock rental of Six Thousand Dollars ($6,000) and monthly operational
17   costs of Eight Hundred Sixty-two Dollars ($862), as well as to annually procure specified
18   liability and pollution insurances on behalf of the vessel.

19         14.     On June 14, 2007, ESCO MARINE sold the ARTSHIP (ex-GOLDEN BEAR) to
20   defendant IMSA for One Million Four Hundred Thousand Dollars ($1,400,000). The ship sale
21   agreement expressly required IMSA to hold ESCO MARINE harmless from any and all claims
22   arising from the vessel, even after the delivery of the vessel to IMSA.[2]

23         15.     On June 22, 2007, IMSA and ESCO MARINE entered into another written
24   agreement[3] whereby IMSA acknowledged the existence of the LENNAR/ESCO MARINE
25
26   _____
    [1] See the accompanying declaration of Kevin K. Ho, with EXHIBIT A attached thereto.
27
    [2] See the accompanying declaration of Kevin K. Ho, with EXHIBIT B attached thereto.
28
    [3] See the accompanying declaration of Kevin K. Ho, with EXHIBIT C attached thereto.
10932093.1                              – 3 –
VERIFIED COMPLAINT IN ADMIRALTY TO FORECLOSE MARITIME LIEN,
FOR BREACH OF CONTRACT, AND DECLARATORY RELIEF

1 | wharf lease (EXHIBIT A) and agreed "to perform the Lease fully as though it were originally
2 | the Tenant thereunder, including, but not limited, to making all payments when due…and
3 | maintaining insurance as required under the Lease…."

4 |     16.    IMSA further agreed in the June 22, 2007 agreement to "indemnify and hold
5 | [Esco Marine] harmless from any and all claims whatsoever arising under the Lease or in
6 | relation thereto…."  IMSA also admitted the existence of certain security deposits given by
7 | ESCO MARINE to LENNAR, and promised it would "do nothing to jeopardize the refund of
8 | the security deposit…" to ESCO MARINE.

9 |     17.    Although LENNAR was aware of the sale of the ARTSHIP to IMSA, it did not
10 | enter into a new wharfage lease regarding the ARTSHIP with IMSA after the sale.  Instead,
11 | LENNAR continued to hold ESCO MARINE responsible under the original wharf lease
12 | agreement (which is and was the only agreement allowing the ARTSHIP, now-PACIFIC STAR,
13 | to berth at LENNAR's dock), and advised it would hold ESCO MARINE liable for any defaults
14 | of IMSA.

15 |     18.    In or about April 2008, LENNAR advised ESCO MARINE that IMSA had
16 | neglected to pay rent under the wharf lease, and had failed to procure and maintain the
17 | contractually-required liability insurances.

18 |     19.    Under the terms of its agreements with IMSA, notices of any potential defaults or
19 | defaults were to be mailed by ESCO MARINE to IMSA at an address agreed to by IMSA in
20 | said agreements.

21 |     20.    On April 7, 2008, IMSA – and its principals KEN CHOI and ANNE
22 | FALCHE - were advised in writing by ESCO MARINE that IMSA was in default of its
23 | obligations under both the June 22, 2007 agreement and the underlying LENNAR wharf lease.
24 | ESCO MARINE demanded that IMSA immediately correct said defaults.

25 |     21.    IMSA did nothing to rectify its defaults following the April 7, 2008
26 | correspondence.

27 | ///

28 | ///

10932093.1     – 4 –

22.     Accordingly, on or about June 9, 2008, IMSA (and CHOI and FALCHE) were formally told in writing by ESCO MARINE that IMSA had defaulted on its maritime contractual obligations, and that ESCO MARINE intended to assert a maritime lien against the vessel.

23.     ESCO MARINE has properly and timely performed all of its ARTSHIP-related obligations under its contracts with IMSA.

24.     IMSA has never responded to ESCO MARINE's June 9, 2008 correspondence, and remains in default.

25.     On November 14, 2008, LENNAR notified ESCO MARINE in writing of the defaults under the wharf lease (*i.e*, failure to pay rent and failure to procure insurance), and advised that the lease for the ARTSHIP was terminated.[4]  ESCO MARINE and IMSA were told by LENNAR to move the ARTSHIP from LENNAR's premises no later than December 14, 2008.  Should the ARTSHIP hold over at LENNAR's wharf beyond the thirty (30) day period, ESCO MARINE was to be charged penalty rent at Two Hundred Percent (200%) the normal rate.

26.     LENNAR has demanded immediate payment of more than Forty-one Thousand Dollars ($41,000) from ESCO MARINE, which represents approximately six (6) months' rent unpaid by IMSA.  Past due rent continues to accrue.  As a result of IMSA's defaults, ESCO MARINE has also incurred costs incident to the procurement and maintenance of insurance on the ARTSHIP.

27.     The nine thousand (9,000) ton vessel at issue herein (official Coast Guard No. 239932) was built for the United States government at Sparrow Point, Maryland in 1940 for use as an ocean-going troop carrier.  In 1971, the vessel was donated to the California Maritime Academy in Vallejo, California, to be used as a student training ship.  The vessel was then re-named the GOLDEN BEAR.  In 1995, the GOLDEN BEAR was retired to the Suisun Bay Reserve Fleet.  In 1999, the ship was deeded to the ARTSHIP foundation for One Dollar ($1), re-named the ARTSHIP, and converted for use as a floating cultural center at the Port of

---

[4] See the accompanying declaration of Kevin K. Ho, with EXHIBIT E attached hereto.

10932093.1                                              – 5 –

1 │ Oakland, California.  The Artship cultural center concept was not successful.  In March 2007,

2 │ the ARTSHIP (ex-GOLDEN BEAR) was purchased by ESCO MARINE.  The vessel was then

3 │ located at LENNAR's wharf at Mare Island, California.  On June 14, 2007, the ARTSHIP was

4 │ sold to IMSA.  IMSA subsequently sold the ARTSHIP (now allegedly re-named the PACIFIC

5 │ STAR) to IDS.  The official Coast Guard abstract of title for the vessel, however, does not show

6 │ this change of title.

7 │ **IV.  FIRST CAUSE OF ACTION – FORECLOSURE OF MARITIME LIEN**

8 │     28.    ESCO MARINE incorporates and thereby re-alleges the preceding paragraphs 1

9 │ through 27, the same as if set forth here in full.

10 │     29.    Defendants' failure to procure insurance for the ARTSHIP gave rise to a

11 │ maritime lien against the vessel under the general maritime law and related statutes and laws.

12 │     30.    Defendants' breach of the LENNAR wharfage agreement, a maritime contract,

13 │ gave rise to a maritime lien against the vessel under the general maritime law and related

14 │ statutes and laws.

15 │     31.    Defendants' breach of the June 22, 2007 agreement with ESCO MARINE, a

16 │ maritime contract, gave rise to a maritime lien against the vessel under the general maritime law

17 │ and related statutes and laws.

18 │     32.    The vessel is subject to maritime arrest and to be sold to satisfy the debt for the

19 │ breaches of the maritime contract set forth above.

20 │     33.    ESCO MARINE is entitled to foreclose its lien against the vessel and recover

21 │ from her sale an amount in excess of Forty-one Thousand Dollars ($41,000), plus interest, fees,

22 │ and costs.

23 │     WHEREFORE, plaintiff prays for relief as hereinafter set forth.

24 │ **V.  SECOND CAUSE OF ACTION – BREACH OF CONTRACT**
25 │ **(AGAINST ALL DEFENDANTS)**

26 │     34.    ESCO MARINE incorporates and thereby re-alleges the preceding paragraphs 1

27 │ through 33, the same as if set forth here in full.

28 │

VERIFIED COMPLAINT IN ADMIRALTY TO FORECLOSE MARITIME LIEN,
FOR BREACH OF CONTRACT, AND DECLARATORY RELIEF

1    35.    Defendants have breached their agreements with ESCO MARINE by failing to
2    pay LENNAR a monthly dock rental of Six Thousand Dollars ($6,000), and overhead costs,
3    pursuant to the maritime wharfage agreement and the June 22, 2007 agreement between ESCO
4    MARINE and IMSA.

5    36.    Defendants have further breached other maritime contracts and obligations to
6    procure and maintain certain insurance for the ARTSHIP.

7    37.    ESCO MARINE has properly and timely performed all of its obligations under
8    its contracts with IMSA.

9    38.    As a proximate result of said breaches, ESCO MARINE has been damaged in an
10   amount in excess of Forty-one Thousand Dollars ($41,000).  ESCO MARINE will incur further
11   damages in excess of Fifty Thousand Dollars ($50,000) if ESCO MARINE is required to move
12   the vessel from LENNAR's wharf to some other berth.

13   WHEREFORE, plaintiff prays for relief as hereinafter set forth.

14   ## VI.  THIRD CAUSE OF ACTION – DECLARATORY JUDGMENT (AGAINST ALL DEFENDANTS)
15

16   39.    ESCO MARINE incorporates and thereby re-alleges the preceding paragraphs 1
17   through 38, the same as if set forth here in full.

18   40.    ESCO MARINE has demanded that defendants, and each of them, comply with
19   the terms of both the LENNAR wharfage agreement and the June 22, 2007 contract and pay
20   LENNAR past due and future rent and overhead charges, as well as to procure and maintain the
21   agreed upon insurance.

22   41.    Defendants, and each of them, refuse to comply with the terms of said
23   agreements.

24   42.    An actual and justiciable controversy exists between ESCO MARINE and
25   defendants.

26   43.    The controversy may be resolved by a judicial declaration of the parties' rights
27   and obligations under the pertinent contracts that:

28

VERIFIED COMPLAINT IN ADMIRALTY TO FORECLOSE MARITIME LIEN,
FOR BREACH OF CONTRACT, AND DECLARATORY RELIEF

1          a.      Defendants are required to pay past due and future rents and overhead
2    charges to LENNAR, so long as the vessel is at LENNAR's wharf;

3          b.      Defendants are required to procure and maintain the insurance set forth in
4    the wharfage agreement;

5          c.      Defendants are required to indemnify ESCO MARINE for any and all
6    defaults committed by defendants under the pertinent agreements;

7          d.      Defendants' only right to berth the ARTSHIP at LENNAR's wharf
8    derives from the wharf lease and the agreements with ESCO MARINE, which defendants have
9    breached; and

10          e.      Having no contractual right to keep the vessel at LENNAR's wharf,
11    defendants must move the vessel LENNAR's wharf forthwith.

12          WHEREFORE, plaintiff prays for relief as hereinafter set forth.

13                              **VII. <u>PRAYER</u>**

14          WHEREFORE, it is respectfully requested that plaintiff ESCO MARINE, INC. have
15    judgment, jointly and severally, as follows:

16          a.      Against SS PACIFIC STAR (ex-ARTSHIP, ex-GOLDEN BEAR), her engines,
17    tackle, equipment, appurtenances, freights, cargo, etc., (Official No. 239932) *in rem*, in the
18    amount of Forty-one Thousand Dollars ($41.000), plus interest, costs, and fees, which vessel
19    shall be ordered arrested and sold to pay all liens and judgments against her;

20          b.      Against defendant INTERNATIONAL DATA SECURITY, INC., a Delaware
21    corporate entity, in the amount of Forty-one Thousand Dollars ($41,000), plus interest, costs,
22    and fees;

23          c.      Against    defendant    INTERNATIONAL    MARITIME    SECURITY
24    ALLIANCE, LLC, a Delaware corporate entity, in the amount of Forty-one Thousand Dollars
25    ($41,000), plus interest, fees, and costs;

26          d.      For a declaration from the court that:

27          1)      Defendants are required to pay past due and future rents and overhead
28    charges to LENNAR, so long as the vessel is at LENNAR's wharf;

1        2)     Defendants are required to procure and maintain the insurance set forth in

2  the wharfage agreement;

3        3)     Defendants are required to indemnify ESCO MARINE for any and all

4  defaults committed by defendants under the pertinent agreements;

5        4)     Defendants' only right to berth the ARTSHIP at LENNAR's wharf

6  derives from the wharf lease and the agreements with ESCO MARINE, which defendants have

7  breached; and

8        5)     Having no contractual right to keep the vessel at LENNAR's wharf,

9  defendants must move the vessel LENNAR's wharf forthwith.

10     e.     For such other and further relief as may be deemed just, proper, and equitable in

11  the premises.

12  DATED:  December 12, 2008          BULLIVANT HOUSER BAILEY PC

14                           By  _____

15                               Norman J. Ronneberg, Jr.
                                  Kevin K. Ho

16                               Attorneys for Plaintiff
                                  ESCO MARINE INC.

VERIFIED COMPLAINT IN ADMIRALTY TO FORECLOSE MARITIME LIEN,
FOR BREACH OF CONTRACT, AND DECLARATORY RELIEF

1

## VERIFICATION

2    I have read the foregoing complaint, know its contents, and verify that the same is true

3  of my own knowledge, except as to matters which are therein stated to be on information and

4  belief and, as to those matters, I believe them to be true.

5    I declare under penalty of perjury, under the laws of the State of California, that the

6  foregoing is true and correct.

7    Executed on December ⟨12⟩, 2008 in ⟨Brownsville, TX⟩                         .

8

9                    ESCO MARINE,, INC.

10

11                    By ⟨signature⟩
                       RAFAEL CARRASCO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT IN ADMIRALTY TO FORECLOSE MARITIME LIEN,
FOR BREACH OF CONTRACT, AND DECLARATORY RELIEF