IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ESCO MARINE INC.,

   Plaintiff,      Civ. S- 11-1353 KJM GGH

  vs.

SS PACIFIC STAR,

   Defendant.    <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

   Previously pending on this court's law and motion calendar for October 6, 2011 was plaintiff's motion for default judgment and interlocutory sale of vessel, filed September 16, 2011.  No opposition was filed.  Norman Ronneberg appeared for plaintiff.  Defendants Choi and Falche appeared in pro se.  At hearing, all agreed that the motion was for interlocutory sale only, as one cannot have both an *interlocutory* order and a *judgment* on the same matter at the same time.  Upon review of the motion and supporting documents, the court now issues the following findings and recommendations.

<u>BACKGROUND</u>

   On December 15, 2008, plaintiff filed the underlying complaint in this action in the Northern District of California.  The case was transferred to this district because the *in rem* defendant, a vessel named the SS Pacific Star (ex-ARTSHIP), is berthed at Mare Island in

1   Vallejo, which is in the Eastern District of California.  Other defendants are International

2   Maritime Security Alliance, LLC ("IMSA"), International Data Security, Inc. ("IDS"), Anna

3   Falche, and Kenneth Choi.[1]

4         According to the first amended complaint, filed April 30, 2010, plaintiff Esco

5   Marine sold the SS Pacific Star[2] to defendant IMSA on June 14, 2007.  (FAC ¶ 17.)  IMSA

6   assumed the responsibilities of plaintiff's wharf lease with Lennar whereby IMSA would pay the

7   monthly dock rental of $12,000 and monthly operational costs of $862, and procure annual

8   liability and pollution insurance for the vessel.  (Id. at ¶¶ 16, 19; Ronneberg Decl., ¶ 10.)[3]  Lennar

9   was aware of the sale but did not enter into a new lease agreement with IMSA but rather

10  continued to hold Esco Marine liable under the lease.  (Id. at ¶ 21.)  IMSA failed to pay rent or

11  procure the required insurance, and on April 7, 2008, plaintiff informed IMSA and its principals,

12  Choi and Falche, that they were in default.  (Id. at ¶ 24.)  IMSA has continued to refuse to make

13  payments or move the ship.  The lease was terminated on November 14, 2008.  (Id. at ¶ 29.)

14  Plaintiff seeks declaratory judgment and payment of past and future rent and overhead charges as

15  long as the vessel is at Lennar's wharf, payment of insurance, arrest and sale of the ship to pay

16  $91,000 in damages, plus interest, costs and fees.

17        This case has a long history of attempts by plaintiff to get defendants to move the

18  vessel and numerous promises by defendants to comply with these requests, to no avail.  Years of

19  recalcitrant conduct by defendants culminated in the Northern District's order of May 17, 2011,

20  wherein the court dismissed defendants' counter-claim against Esco Marine with prejudice,

21  struck defendants' answer to the first amended complaint, noted that previous monetary sanctions

22

---

23     [1]  Defendant Naughton passed away in February, 2011.  See Dkt. no. 99 at 2.

24     [2]  The ship's name was originally ARTSHIP.

25     [3]  Although the unverified FAC listed the monthly rent at $6,000, the declaration of Mr.
26  Ronneberg indicates the monthly dock rental fee is $12,000, based on a contract entered into by
    plaintiff in 2004 and IMSA in 2008.  (Id.)

had never been paid and ordered them paid by a date certain with interest, imposed further

monetary sanctions, granted default "judgment" against all defendants on the allegations of the

first amended complaint except for the scope and amount of damages, found that defendants had

breached the contracts specified in the first amended complaint, and that defendants Falche and

Choi were the alter egos of defendants IMSA and IDS and therefore personally liable for the

liabilities of those corporations as well as their own.  Order, filed May 17, 2011.  (Dkt. no. 109.)[4]

The order of default judgment (entry of default, see footnote 4) was electronically served on

defense counsel of record.

          After transfer of the action to this district on May 18, 2011, a warrant of arrest

was issued pursuant to this court's order of July 13, 2011.  (Dkt. no. 121.)  A notice of arrest was

published in the Sacramento Bee and the San Francisco Chronicle on July 21 and 24, 2011.

(Dkt. nos. 125, 128.)  All defendants were served with the notice of arrest.  (Beach Decl., dkt. no.

152, ¶¶ 2, 3, 6; dkt. no. 124.)  Defendant Choi filed a letter, dated August 8, 2011, which

purported to object to the arrest of the vessel, (Dkt. no. 135.); however, this objection was

deficient on its face.  Just prior to the filing of this letter, defense counsel Scott Furstman, who

had represented defendants from the beginning, was terminated as counsel by order of August 2,

2011.  (Dkt. no. 133.)  It was at this time that corporate defendants IMSA and IDS were ordered

to retain counsel within thirty days or face entry of default.  (Id.)  On September 12, 2011, after

representing defendants as co-counsel since November 15, 2010, Robert Sheppard was permitted

to withdraw as counsel.  (Dkt. no. 146.)  Shortly thereafter, on September 16, 2011, plaintiff filed

the instant motion and supporting papers which were served by mail on defendants at their last

known address.  Defendants filed no opposition to the motion.

\\\\

---

[4] The undersigned has construed the "default judgment"  as an entry of default because
the matter of damages was reserved, one cannot have a judgment, appealable by its terms because
it is final, with the important matter of damages left hanging.  As set forth in Fed. R. Civ. P.
54(b), erroneous use of the term "judgment" does not change its inherently interlocutory nature.

DISCUSSION

Although plaintiff's September 16, 2011 motion is styled "motion for order of default judgment and interlocutory sale of vessel," counsel conceded at hearing that the motion in reality seeks only an order for the sale of the vessel.  The unique history of this case warrants this characterization as Judge Illston already entered default judgment against all defendants "save as to the scope and amount of damages."  (Dkt. no. 109.)  Because the damages were not ascertained at the time of that order, the order itself serves as an entry of default only.  See footnote 4 above.   The district court's order was based, not on failure to plead or otherwise defend, but rather to sanction defendants for their conduct throughout the case.  Plaintiff's motion for sanctions which led to the order of default judgment sets forth defendants' actions in full, and described three previous motions for sanctions which were granted, but which defendants contemptuously disregarded.  (Dkt. no. 102.)  Defendants flouted court orders to produce discovery and appear for deposition, were sanctioned monetarily for their untruthful representations that no responsive documents existed, and their sanction check was returned for insufficient funds.  (Id.)  The court found "outright defiance of this court's orders" and that one of the defendants had "committed perjury" at his deposition.  (Id. at 13, Ronneberg Decl., Ex. E.)  At the hearing on the motion, the district judge proclaimed on the record:

> [Defendants] are in outright defiance of this court's orders.
> As far as I can tell, Mr. Choi, who actually is quite a charming man, I think, committed perjury at his deposition, because that's not the kind of thing about which one would be confused or mistaken.  That was just a clear lie, it sounds like to me, and it was a material matter.
> So, you know, those are all very serious things.  And I have absolutely no confidence either in the likelihood of his showing up for his deposition, or it's being truthful once it's given, based on the track record we have seen so far in this case.

(Ronneberg Decl., Ex. E.)

At hearing on the instant motion, defendant Falche gave various reasons why defendants should be excused, that co-defendant Admiral Naughton, President of IMSA, had

1   died in February and that she had been diagnosed with cancer at that time.   She also asserted that

2   former counsel Furstman was de-barred and that defendants were unable to get documents from

3   him.  All of these unfortunate events did happen, however, they occurred long after the conduct

4   which the Northern District found sanctionable.  Whatever the reason for Furstman's debarment,

5   the fact remains that defendants were represented by competent co-counsel Sheppard until just a

6   few weeks ago.[5]

7          To the extent that any of these arguments existed and could have been raised with

8   the district court at the time of the hearing on the motion for terminating sanctions, they should

9   have been raised at that time.  That order now stands as the law of the case.  Defendants' only

10   recourse was to move for reconsideration of the order of default judgment (entry of default).

11   They can not now argue the merits of that decision, but are limited to arguing the scope of the

12   damages only.  See W.W. Schwarzer, A.W. Tashima & J. Wagstaffe, Federal Civil Procedure

13   Before Trial § 6:6 (entry of default removes defendant's right to appear in the action other than

14   by filing a motion for relief from default); § 6:92 (entry of default judgment establishes

15   defendant's liability and he may only dispute amount of damages).  Entry of default effects an

16   admission of all well-pleaded allegations of the complaint by the defaulted party.  Geddes v.

17   United Financial Group, 559 F.2d 557 (9th Cir. 1977).

18          "A judgment by default may not be entered without a hearing on damages unless

19   ... the amount claimed is liquidated or capable of ascertainment from definite figures contained in

20   the documentary evidence or in detailed affidavits."  Dundee Cement, 722 F.2d 1319, 1323 (7th

21   Cir. 1983) (citing Geddes); Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir.1981) (no hearing

22   necessary when documents show judgment amount based on a definite figure); see also  Fed. R.

23   Civ. P. 55(b)(2) (the district court has the discretion to conduct or refuse a hearing on default

24

25          [5]  It should be noted that Mr. Sheppard withdrew as counsel because he had not been paid
     his fees for nine months, and none of the defendants would communicate with him over the
     previous five months, despite numerous attempts to communicate on his part.  (Dkt. no. 137 at

26   2.)

1    judgment).  A hearing on the issue of damages is not required as long as the court finds there is a

2    basis for the damages specified.  <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping</u>

3    <u>Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997).  Affidavits or other documentary evidence is sufficient

4    to evaluate the fairness of the amount requested.  <u>Tamarin v. Adam Caterers, Inc.</u>, 13 F.3d 51, 54

5    (2nd Cir. 1993).

6            Because defendants filed no opposition to the instant motion, their arguments may

7    not be heard.  <u>See</u> E. D. Local Rule 230(c) ("No party will be entitled to be heard in opposition to

8    a motion at oral arguments if opposition to the motion has not been timely filed by that party"). [6]

9    Despite the fact that orders of this court have been returned as undeliverable (dkt. entries on

10   September 21 and 28, 2011), defendants were properly served with the motion at their address of

11   record.  <u>See</u> E. D. Local Rule 182(f) (each party has a continuing duty to notify the Clerk and

12   other parties of a change of address, and without such notice, service of documents at a prior

13   address of record shall be fully effective).  As plaintiff points out, the address used by the court

14   and the parties for service of documents which were returned as undeliverable is the same

15   address used by defendant Choi on his letterhead to object to the arrest.  (Compare docket

16   number 135 and docket entries on September 7, 21, 28, 2011.)

17           Therefore, the previous entry of default judgment and the failure to file opposition

18   to plaintiff's motion prevent defendants from any consideration in opposition to the motion.

19   Having reviewed plaintiff's declarations in support of its motion, the court now makes the

20   following findings.

21   \\\\

22   \\\\

23

24        [6] Although the defaulting defendants could not contest liability, the interlocutory sale of a
     vessel goes to the ultimate remedy here, and the defaulting defendants, if they had properly
25   opposed the interlocutory sale for some reason other than already-determined-liability, could
     have sought to avert the sale.  As explained in the text, they did not oppose the interlocutory sale
26   on proper grounds.

1    IMSA is the owner of the vessel named ARTSHIP which it re-named the SS

2  Pacific Star.  Ownership was registered with the United States Coast Guard on May 20, 2008.[7]

3  The ship is located in Vallejo which is in the Eastern District of California.  The request for

4  arrest was reviewed by the undersigned and found to be proper.  The arrest of the vessel

5  complied with statutory notice requirements.  Supplemental Admiralty Rules C(3), C(4).

6  Publication of notice of the arrest was properly effectuated.  (Dkt. nos. 125, 128.)  Because the

7  vessel is found in this district and it has been properly arrested, this court has jurisdiction over

8  the vessel SS Pacific Star.  Fed. R. Civ. P. Supp. C(2).

9    Defendants had notice of the arrest of the vessel and the instant motion for default

10  judgment.  (Dkt. nos. 121, 124, 125, 128, 148.)  Upon arrest of the vessel, and pursuant to the

11  court's order of arrest, filed July 13, 2011, defendants had the opportunity to object to the arrest

12  and request a post-arrest hearing within fourteen days of publication of the notice of arrest, but

13  failed to do so.  Id., Rule C(6)(a), E(4)(f).

14    Defendant Choi's letter, filed August 8, 2011, failed to contain a verification or

15  sworn affidavit and did not comply with the requirements set forth in Supplemental Admiral

16  Rules C(6) and E(4)(f).  See Rule E Advisory Committee Notes to1985 Amendment (post-arrest

17  challenge should use application similar to application for temporary restraining order as found

18  in Rule 65(b)).  Rule C(6) requires that a person claiming an interest in the property that is the

19  subject of the action file a verified statement within fourteen days of the execution of process or

20  other time allowed by the court.  This statement must describe the interest asserted.

21    Furthermore, a person claiming an interest is entitled to a prompt hearing where

22  the plaintiff must show why the arrest or attachment should not be vacated.  Supp. Admiralty

23  Rule E(4)(f); E.D. Local Admiralty Rule 513.  Choi's letter also failed to request a hearing.  See

24

25  [7]  According to the FAC, IMSA sold the ship to IDS; however, Coast Guard records reflect IMSA as the owner.  (FAC, dkt. no. 55, ¶ 31.)  According to the deposition testimony of defendant Falche, IMSA is still the registered and actual owner of the vessel.  (Ronneberg Decl., Ex. D.)

26

1  Salazar v. Atlantic Sun, 881 F.2d 73, 79 (3rd Cir. 1989) (finding no denial of due process where

2  owner did not request post-arrest hearing).  Additionally, Choi, as owner of IMSA, has no right

3  to appear pro se to represent IMSA's interests because this corporation was required to retain

4  counsel and failed to do so, despite the district court's order.

5           Nor has any defendant filed an answer to the demand for arrest within twenty-one

6  days after publication, which is an additional requirement.  Rule C(6)(a)(iv).  No defendant has

7  offered to cover costs incurred by plaintiff and the United States Marshal in exchange for

8  immediately moving the vessel pursuant to a stipulation.  Rule E(5)(c).  Defendants have also

9  failed to post a bond or letter of undertaking to cover plaintiff's claim in order to secure the

10  release of the vessel, as permitted by Rule E(5)(a) and 28 U.S.C. § 2464.  Defendants' failure to

11  object authorizes the court to hold the vessel in default and bar future claims to the vessel's

12  proceeds.  U.S. v. Pride of Texas, 964 F.Supp. 986, 988 (E.D. Va. 1994).  As plaintiff has

13  complied with all notice requirements, the time to respond has expired, and no defendant has

14  properly attempted to claim the vessel, plaintiff's motion for interlocutory sale should be granted.

15           Even at this late date in the proceedings, defendants have additional options,

16  however.  They may seek leave of court to move the vessel at least three days before the

17  scheduled date of sale and reimburse plaintiff for costs of post-arrest upkeep, custody, wharfage

18  and insurance.  Fed. R. Civ. P. Supp. Admiralty Rule E(5).  Defendants may alternatively post a

19  bond or other security, including the costs of moving the vessel.  Id.  Finally, defendants may

20  challenge the sale within three days after the sale, but before it is finally approved and confirmed

21  by this court.  E. D. Local Admiralty Rule 570(f).

22           The Supplemental Rules of Admiralty provide in part:

23           (a) Interlocutory Sales; Delivery.

24           i) On application of a party, the marshal, or other person having
            custody of the property, the court may order all or part of the
25           property sold--with the sales proceeds, or as much of them as will
            satisfy the judgment, paid into court to await further orders of the
26           court--if:

(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
(B) the expense of keeping the property is excessive or disproportionate; or
(C) there is an unreasonable delay in securing release of the property.
(ii) In the circumstances described in Rule E(9)(a)(i), the court, on motion by a defendant or a person filing a statement of interest or right under Rule C(6), may order that the property, rather than being sold, be delivered to the movant upon giving security under these rules.

(b) Sales; Proceeds. All sales of property shall be made by the marshal or a deputy marshal, or by other person or organization having the warrant, or by any other person assigned by the court where the marshal or other person or organization having the warrant is a party in interest; and the proceeds of sale shall be forthwith paid into the registry of the court to be disposed of according to law.

Supplemental Admiralty Rule E(9)(a).

Here, the vessel is more than seventy years old and has had no significant work done on her for at least three years.  Plaintiff bought the ship with the intention to use it for scrap purposes, but the scrap metal market has been unprofitable recently.  Maritime liens total in excess of $300,000.  Furthermore, the Federal Government has demanded potentially costly pollution remediation expenses.  The monthly rent to berth this vessel at Lennar Wharf is $12,000.  The cost of the vessel custodian as required by the U.S. Marshal is $5,600 per month.  Defendants have not paid rent since 2009.  Unreasonable delay is also present in that defendants' have a lengthy history of delaying movement of the vessel, including breaking promises and breaching court orders, and the City of Vallejo has an immediate necessity to have the vessel moved in order to obtain federal grant in the amount of $4.2 million, to build a ferry and passenger terminal.  The city of Vallejo will lose this funding if the vessel is not moved soon. (Sheaff Decl., ¶ 8.)  The Navy cannot begin environmental remediation activities until the vessel is moved.  (Id., ¶ 9.)  Plaintiff has submitted a proposed order for disposition of the vessel which \\\\

1   is approved, except that the date of the public auction is rescheduled from October 27 to October

2   28, 2011.

3   CONCLUSION

4           Good cause appearing, IT IS RECOMMENDED that plaintiff's motion for default

5   judgment and interlocutory sale of vessel, construed as a motion for interlocutory sale of vessel

6   only, filed September 16, 2011, (dkt. no. 148), be granted.  The proposed order filed by plaintiff

7   on October 7, 2011, (dkt. no. 162), and is approved as to form and substance, except that the date

8   of the sale is rescheduled to October 28, 2011.

9           These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **five**

11  (5) days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within **two** (2) days after service of the objections.  The parties are

15  advised that failure to file objections within the specified time may waive the right to appeal the

16  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17  DATED: October 11, 2011

18                                  /s/ Gregory G. Hollows
                                    UNITED STATES MAGISTRATE JUDGE

19  GGH:076/EscoMarine1353.def.wpd

20

21

22

23

24

25

26